### UNITED STATES v. SEARLS et al.
### No. 3101.

Circuit Court of Appeals, Fourth Circuit.
April 13, 1931.

Okey P. Keadle, Asst. U. S. Atty., of Huntington, W. Va. (James Damron, U. S. Atty., and David F. Sheets, Asst. U. S. Atty., both of Huntington, W. Va., William Wolff Smith, Gen. Counsel, U. S. Veterans' Bureau, and Bayless L. Guffy, Atty., U. S. Veterans' Bureau, both of Washington, D. C., on the brief), for the United States.

Roderick G. Merrick, of Charleston, W. Va., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment in favor of plaintiffs, who are beneficiaries under a policy of war risk insurance issued to one Dolph C. Searls, who died April 22, 1922. Insured was honorably discharged from the army May 13, 1919, and paid no premiums after his discharge. The grace period kept the policy operative to and including June 30, 1919, and the question in the case is whether he was totally and permanently disabled at that time.

There was evidence on the part of plaintiffs showing that insured had a bad cough when he came home from the army and that this cough grew worse and was accompanied by hemorrhages or spitting of blood. He was found to have tuberculosis and died of

that disease. There was evidence that from the time of his discharge he was unable to work regularly on account of his physical condition. Without reviewing the evidence at length, we are satisfied that it was amply sufficient to take the case to the jury on the theory that insured was totally and permanently disabled while the policy was in force, within the principles decided in Carter v. U. S. (C. C. A.) 49 F.(2d) 221, and that the motion of the government for a directed verdict was properly overruled.

■ Although the evidence was sufficient to support a verdict for plaintiffs, we do not think that it was sufficient to justify the direction of a verdict in their behalf; and a new trial must be awarded because the learned trial judge virtually directed a verdict for them. At the request of plaintiffs, he gave the jury an instruction to the effect that, if insured had tuberculosis at any time prior to his death on April 22, 1922, he was conclusively presumed to have contracted it during his service in the army, and to this instruction he added that under it he saw nothing for the jury to do but find a verdict for plaintiffs. The instruction was as follows: "The Court instructs the jury in the case at bar, that if they believe from the evidence, that Dolph C. Searls served in the Army of the United States of America between June 6, 1918 and March 13, 1919, and if they believe from the evidence that the said Dolph C. Searls while in such United States Army within and for the period aforesaid had in force a contract of insurance with the United States of America in the amount of $10,000.00; and that the same was in full force and effect until or even after the time when the said Dolph C. Searls was discharged from said Army; and if the jury believe from the evidence in the case at bar that Dolph C. Searls had an active tuberculosis disease at any time before April 22, 1922, the day of his death, then they, the jury, shall consider that such disease in point of law was conclusively presumed to have been contracted while the said Dolph C. Searls was in the United States Army between the period of June 6, 1918, and March 13, 1919, and while such policy here sued on was in full force and effect; and such presumption, if any there is, cannot be rebutted in point of law."

The remark of the judge made at the conclusion of reading this instruction and as his final word to the jury was as follows: "I am frank to say that under such instructions I can see nothing for you to do but find a verdict for the plaintiffs."

■ The instruction complained of was based on what we think is a misinterpretation of a portion of section 200 of the World War Veterans' Act, as amended by the Act of July 2, 1926, § 7, 44 Stat. 793, 38 USCA § 471, which, however, has been amended by the Act of July 3, 1930, Acts of 71st Congress, 2nd Session, part 1, p. 995, § 11 (38 USCA § 471). As the case was tried in the court below before the amendment of 1930, it is necessary to consider what presumption was created by the section in question prior to that amendment, and whether it had any application to the case presented here. We do not think that it did. Section 200 of the World War Veterans' Act, 43 Stat. 615, 616, provided for the compensation and treatment of officers, enlisted men, etc., for injury or aggravation of injury suffered during the war. That section was as follows:

"Sec. 200. For death or disability resulting from personal injury suffered or disease contracted in the military or naval service on or after April 6, 1917, and before July 2, 1921, or for an aggravation or recurrence of a disability existing prior to examination, acceptance, and enrollment for service, when such aggravation was suffered and contracted in, or such recurrence was caused by, the military or naval service on or after April 6, 1917, and before July 2, 1921, by any commissioned officer or enlisted man, or by any member of the Army Nurse Corps (female) or of the Navy Nurse Corps (female) when employed in the active service under the War Department or Navy Department, the United States shall pay to such commissioned officer or enlisted man, member of the Army Nurse Corps (female), or of the Navy Nurse Corps (female), or, in the discretion of the director, separately to his or her dependents, compensation as hereinafter provided. * * * That for the purposes of this section every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department who was discharged or who resigned prior to July 2, 1921, and every such officer, enlisted man, or other member employed in the active service under the War Department or Navy Department on or before November 11, 1918, who on or after July 2, 1921, is discharged or resigns, shall be conclusively held and taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, disorders, or infirmities made of record in any manner by proper authorities of the United States at the time of, or prior to, inception of active service, to

the extent to which any such defect, disorder, or infirmity was so made of record: Provided, That an ex-service man who is shown to have or, if deceased, to have had, prior to January 1, 1925, neuropsychiatric disease, an active tuberculous disease, paralysis agitans, encephalitis lethargica, or amoebic dysentery developing a 10 per centum degree of disability or more in accordance with the provisions of subdivision (4) of section 202 of this Act shall be presumed to have acquired his disability in such service between April 6, 1917, and July 2, 1921, or to have suffered an aggravation of a pre-existing neuropsychiatric disease, tuberculosis, paralysis agitans, encephalitis lethargica, or amoebic dysentery in such service between said dates, and said presumption shall be conclusive in cases of active tuberculous disease, but in all other cases said presumption shall be rebuttable by clear and convincing evidence; but nothing in this proviso shall be construed to prevent a claimant from receiving the benefits of compensation and medical care and treatment for a disability due to these diseases of more than 10 per centum degree (in accordance with the provisions of subdivision (4), section 202, of this Act) on or subsequent to January 1, 1925, if the facts in the case substantiate his claim." (Italics ours.)

Section 200 was a part of title 2 of the act of 1924, which dealt with compensation and treatment. Title 3 of that act dealt with war risk insurance; and section 304 thereof (43 Stat. 625) related to the reinstatement of lapsed policies by disabled veterans suffering from injury or disease contracted during the war. It required as a condition of reinstatement of a lapsed policy that the applicant during his lifetime submit satisfactory proof showing the service origin of the disability or aggravation thereof. The act of 1924 was amended by the act of July 2, 1926, so as to provide, among other things, for the reinstatement of the policies of disabled veterans in certain cases without proof that their disability was of service origin. To accomplish this result the proviso of section 304 requiring the applicant to submit proofs of the service origin of his disability was omitted and the words which we have italicized in section 200 of the Act of 1924, "that for the purposes of this section," were changed by the amendment to read "that for the purposes of this Act." 44 Stat. 793 and 799 (38 USCA §§ 471, 515). The effect, and we think the only effect, of this amendment was to give to the veteran the benefit of the presumption created by section 200 as to service origin of disability, not only in

applications for compensation and treatment, but also in applications for reinstatement of lapsed policies.

On June 9, 1930, the Finance Committee of the Senate, reporting on the bill to amend the World War Veterans' Act, had this to say with reference to the amendment to section 200 by the act of 1926: "The word 'act' was substituted for the word 'section' in the amendment to the World War veterans' act dated July 2, 1926, in order to enable veterans to reinstate insurance under section 304 of the act, and show for that purpose that the disease from which they were suffering at the time of attempted reinstatement was of service origin. It was not intended by the change to enable a veteran in a suit on Government insurance to establish for the purposes of the suit that the disability on account of which the same was based was of service origin. Your committee has been informed that certain courts have so construed this section as it reads in the present law. In order to clarify the matter and show clearly the original intent of the Congress, your committee has therefore changed the word 'act' to 'section and section 304 of this act,' on page 15, lines 2 and 3."

The change thus recommended was incorporated in the Act of July 3, 1930, and it is now made perfectly clear that the presumption as to service origin of disability now exists only as to the matters covered by sections 200 and 304 of the act. Acts of 71st Congress, part 1, page 995.

The decisions referred to in the report of the Senate Committee are presumably Brandaw v. U. S. (C. C. A. 9th) 35 F.(2d) 181, and unreported District Court decisions applying the same doctrine. Mulivrana v. U. S. (C. C. A. 9th) 41 F.(2d) 734, and Runkle v. U. S. (C. C. A. 10th) 42 F.(2d) 804, to the same effect, were decided after the filing of the report. These cases hold that section 200 of the World War Veterans' Act as amended by the act of 1926 raises the presumption as to the service origin of disability arising from a disease mentioned in the section in favor of a claimant seeking a recovery under a policy, and not merely in favor of a veteran seeking compensation or treatment or the reinstatement of a lapsed policy.

While we have great respect for the courts which have reached this conclusion, we cannot follow them in their interpretation of the statute. Conceding that the presumption as raised under the 1926 amendment is not confined to the purposes of section 200, it is

confined to the *purposes of the act,* which provides for compensation, treatment, and reinstatement of insurance for veterans suffering from disabilities of service origin. It does not provide for the establishment of claims under policies as issued, nor does it attempt to regulate procedure in the courts on such policies. It would seem clear, therefore, that, if we look to the language of the act alone, there is nothing to create such presumption in the case of a claim under a policy, which is an entirely different matter from compensation or treatment of disabled veterans or the reinstatement of insurance which they have allowed to lapse.

The same result follows if we look to the purpose of the statute and consider, as we must, its reason and spirit. In the case of a claim of disability under a policy, the question is not as to the origin of the disability, but as to whether it was total and permanent within the meaning of the policy while same was in force. The mere fact that it may have arisen from injury or disease having a service origin does not bear upon the right of recovery. The disability must have been total and permanent during the life of the policy, irrespective of the origin of the injury or disease causing it. And, on the other hand, if the disability was total and permanent, it makes no difference that it may not have been of service origin. There could have been no reason, therefore, in providing that, for the purposes of claims under policies, the diseases mentioned in the act should be deemed to have originated in the service. We think it clear that the presumption was intended to relate to matters as to which the service origin of disability was a consideration of importance, that is to applications under the act for compensation or treatment or for reinstatement of insurance.

There was error, therefore, in giving the special instruction requested by plaintiffs; and this error was accentuated when the learned trial judge remarked that under the instruction he could see nothing for the jury to do but find a verdict for plaintiffs. Whatever the origin of the disease causing disability, plaintiffs were not entitled to recover unless the insured became totally and permanently disabled while the policy was in force. As was well said by Judge Wilbur in Evans v. U. S. (C. C. A. 9th) 43 F.(2d) 719: "The appellant's case did not depend upon the question of the service origin of the disease from which he died, but upon the degree of his disability therefrom. Unless that disability was total and permanent during the life of the policy, the appellant could not recover."

For the reasons stated, there was error in the trial below, and the case must be remanded for a new trial.

Reversed.