### UNITED STATES v. MONGER.
No. 937.

Circuit Court of Appeals, Tenth Circuit.
April 10, 1934.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (Will G. Beardslee, Sp. Asst. to Atty. Gen., Wilbur C. Pickett, Atty., Department of Justice, of Washington, D. C., Carl L. Sackett, U. S. Atty., and Ewing T. Kerr, Asst. U. S. Atty. both of Cheyenne, Wyo., and S. B. Garrett, Chief Atty., Veterans' Administration, of Casper, Wyo., on the brief), for the United States.

W. J. Wehrli, of Casper, Wyo. (G. R. Hagens, of Casper, Wyo., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and VAUGHT, District Judge.

VAUGHT, District Judge.

The parties to this action will be referred to as they appeared below. The plaintiff brought this action alleging that the insured, her former husband, at the time he was discharged from the Army and while his policy of war risk insurance was in force and effect, was totally and permanently disabled because of active pulmonary tuberculosis, from which disease he died on August 4, 1924. The defendant denied liability. The case was tried to a jury, a verdict was returned in favor of plaintiff, on which judgment was rendered, and from which judgment defendant prosecutes this appeal.

Two specifications of error are made the basis of defendant's argument for reversal of the judgment:

First. That there was no substantial evidence to support a finding of permanent total disability while the insurance was in force;

Second. That the court's instruction concerning the presumption of service origin of the disability constituted prejudicial error.

We will consider the first proposition.

All jurisdictional facts are admitted. The insured was discharged from the service on July 1, 1919. His insurance policy was kept alive by payment of the premiums until August 1, 1919. He died August 4, 1924, of pulmonary tuberculosis. There is no contention that he did not have pulmonary tuberculosis at the time of his death, and that said condition had not existed since March, 1922. The only question involved was whether or not at the time of the lapse of his policy of insurance he had tuberculosis of such a nature and character as to render him totally and permanently disabled.

The testimony of Mrs. Ora McGill Monger was that the insured returned to her homestead immediately after his discharge; that the third day after he returned he had night sweats necessitating a change of clothes; that he advised the witness that he had had them for some time but that was the first time the witness noticed them. She also noticed his coughing. These night sweats continued and his coughing continued, growing gradually worse. He never smoked, and had lost little if any weight, although he looked pale. His coughing spells would last for twenty or thirty minutes at a time. Frequently, he would have two or three coughing spells in the same night. He began spitting when coughing. This continued until he went to the hospital in March, 1922. Some days he looked better and some days he looked worse. Any physical exertion would tire him and cause him to cough, after which he would lie down and rest. He tried to do whatever work he could on the farm but was not able to do heavy work or to work continuously.

Other lay witnesses testified that on one occasion in October, 1919, the insured had a coughing spell, got off the plow, lay down under the wagon to rest, and his wife took the plow and went on with his work; that his condition from the time of his return

from the Army until March, 1922, gradually grew worse; that he could not do ranch work after his return from the Army; that the slightest exertion tired him and brought on coughing. Another witness observed the insured with a hacking cough approximately a month after his return from the service; and that immediately after a coughing spell it was necessary for the veteran to rest for ten or fifteen minutes before he could resume what he was doing.

His examination at the Fitzsimons General Hospital, Denver, Colo., on March 9, 1922, disclosed a diagnosis of "acute pulmonary tuberculosis. Prognosis poor." Also, that claimant had a handicap because of his physical and mental condition so that vocational training was not feasible.

Dr. N. C. Geis, a medical witness, also testified for the plaintiff below, from reports of the veterans' hospital examination, that from March 9, 1922, until his death the plaintiff had acute pulmonary tuberculosis, progressive, and of very rapid advancement, and that on August 17, 1923, the condition of the veteran had grown to a distinct disabling character, and in his opinion, in answer to a hypothetical question, reviewing all the evidence introduced by the plaintiff, the insured had tuberculosis upon his discharge from service and that the condition became active at the time he began losing weight and had night sweats. He further testified that in his opinion the insured was totally disabled upon discharge from the service. Upon cross-examination he testified that the insured was suffering from incipient tuberculosis at the time of his discharge.

It is not necessary to review the evidence of the defendant below, the facts in this case were submitted to a jury, and the question for this court to determine is whether or not there was sufficient evidence upon which the jury could return a verdict in behalf of the insured.

The existence of active tuberculosis has been held to constitute total disability. Nicolay v. United States (C. C. A. 10) 51 F. (2d) 170, 173. It is true that one having tuberculosis, with proper care might probably recover, however, in most cases those having incipient tuberculosis are unaware of the seriousness of their affliction and are inclined to the belief that it is merely a cold or some other temporary trouble and their efforts to do a reasonable amount of work in the belief that their affliction is merely temporary, ought not to be weighed against them. In

Nicolay v. United States, supra, the court said:

"While the rule may be difficult of application, it is nevertheless a simple one, and it is that the question of the totality and permanence of the disability is a question of fact for the jury, if the evidence is such that reasonable men may differ as to the answer."

There is no evidence in this case of any physical examination by a physician during the first year, or year and a half, after the insured's return from the service. The plaintiff, therefore, relied upon lay evidence to show the actual condition of the insured during that period. In this case it would have been impossible for the plaintiff to show the insured's actual physical condition during the period immediately following his discharge and prior to his examination at the hospital, except by the testimony of those who personally knew the insured's condition. It is true that lay witnesses may not testify on matters of opinion and judgment as medical witnesses. However, the fact that the insured had night sweats, that he coughed continuously, that he could work only a very short time without resting, that he continued to expectorate, that he gradually grew weaker, and the times of these occurrences are matters concerning which lay testimony is just as competent as medical testimony.

In this case the jury had not only lay testimony but also medical testimony and it was for the jury to reach its conclusion after considering all of the testimony.

In United States v. Gower et al. (C. C. A. 10) 50 F.(2d) 370, 371, this court said:

"Moreover, expert testimony is only an aid to the solution of the main issue. It cannot be arbitrarily ignored or indolently accepted, and after it has been considered by the jury, if they believe their own experience, observations and common knowledge, as applied to the facts in the case, will guide them to a solution and verdict, they have a right to follow their own convictions, thus reached, although in doing so their verdict may be contrary to the opinion evidence of experts on the subject."

The same principle is announced in Carter v. United States, 49 F.(2d) 221, from the Fourth Circuit.

There was evidence upon which the jury could return the verdict which was returned in this case. The rule recognized by this court is where there is evidence to support

the verdict of a jury the appellate court will not disturb the verdict.

■ Under the second proposition we will consider the objection raised by defendant to the court's instruction of statutory presumption of service origin of tuberculosis if insured died in 1925 or prior thereto.

The instruction to which defendant excepts, and to which an exception was duly taken at the trial below, is as follows:

"There is a presumption, under the statutes of the United States, which might apply in cases of this kind—a statutory presumption—which provides, in substance, that any man who was in the service of his country prior to a period in the year 1925—which is not material in this case because this man died in 1924—and was suffering from a disease or a number of diseases, among which is this disease of which it is admitted this man died, to a degree which incapacitated him to a ten per cent disability, that then it is presumed it was then developed before his discharge from the army. As you will understand, gentlemen, when this case is presented to you and no evidence is offered upon the question as to when the tuberculosis originated, which it is shown that this insured had, under this presumption it was presumed, on account of his death in 1924 from it, that it originated during the time that he was in the service of his country, before his discharge, but I charge you that this is a rebuttable presumption, that it is a presumption that may be wiped out of existence by the offering of testimony which tends to disprove that there was anything to that presumption. That testimony has been offered in this case tending to disprove the presumption which I have mentioned, so that you will base your determination as to whether the disease, from which this man died, was a service-connected disease or otherwise upon the evidence in this case which has been offered by the plaintiff and by the defendant, and not upon the presumption."

Under the World War Veterans' Act of 1924 (§§ 200, 304, 43 Stat. 615, 625, 38 US CA §§ 471, 515 note) there was a provision that service connection would be presumed under certain conditions but that act made the presumption applicable only to compensation cases and not to insurance cases. The act was amended, however, in 1926 (44 Stat. 793, 799) which made the presumption clause applicable to insurance cases. Under the act of 1930 (38 USCA §§ 471, 515), which was an amendment to the act of 1924 as amended in 1926, the presumption clause was

again made applicable only to compensation cases and not to insurance cases and this has been the holdings of the courts which have passed on this question since the 1930 amendment.

We conclude, therefore, that the instruction complained of, using the expression, "there is a presumption, under the statutes of the United States, which might apply in cases of this kind," and explaining what the presumption was, was without statutory basis. In connection with this instruction, however, the court said:

"You will base your determination as to whether the disease from which this man died was a service-connected disease or otherwise, upon the evidence in this case which has been offered by the plaintiff and the defendant and not upon the presumption."

After the court had concluded his instruction, the attorney for the government excepted to that portion of the instruction which stated that there is a statutory presumption that any man who has been in the military service of the United States prior to 1925 and is then suffering from tuberculosis, it would be presumed that such disease developed in the Army.

The court replied, "Very well, I am not a bit afraid of reversal on your first exception on the presumption, because I finished it up by saying it did not amount to anything because there was evidence offered here and they must decide from the evidence."

By the district attorney: "I noticed that."

In answer to exceptions by the attorney for the plaintiff, the court also said: "I think I went a little stronger than that, that they must decide it upon the evidence and not upon the presumption."

So it is not a question whether or not the instruction of the court, as originally given, constituted error, but whether it constituted such prejudicial error as would interfere with the jury determining the physical condition of the insured at the time of his discharge, from the evidence that was introduced. The court told the jury that they must not consider any presumption but that they must reach their verdict from the evidence actually introduced. This was repeated twice in instructions to the jury after counsel's exceptions. If, therefore, this did not constitute prejudicial error or after it was cured by the statement of the court, can it be considered as merely a superfluous statement? We are of the opinion that that is the extent of the error. Since the state-

ment was made, the court recognized the error and withdrew it from the jury and advised the jury that they must reach their conclusion from the evidence introduced and not consider the presumption referred to.

In United States v. Wescoat (C. C. A.) 49 F.(2d) 193, 194, the court said:

"The trial judge erroneously instructed the jury, as he did in the case of United States v. Searls (C. C. A.) 49 F.(2d) 224, this day decided, that, where the insured developed active tuberculosis prior to January 1, 1925, he was presumed to have contracted it while in the army. We think, however, that the error here was harmless. In the first place there was practically no doubt under the evidence that the tuberculosis of plaintiff originated during his army service; and the controversy in the case was, not as to the origin of the disease, but as to the extent and permanency of the disability. In the second place, the court clearly, correctly, and fully charged the jury as to what constituted total and permanent disability within the meaning of the policy, charging them explicitly in this connection that, before plaintiff could recover, he must satisfy them, by a preponderance of the evidence, that he was totally disabled from carrying on continuously any substantially gainful occupation, and, in addition, that such disability was founded on conditions which made it reasonably certain that it would continue throughout his lifetime. In view of this charge, we do not think that the erroneous instruction that the disease was presumed to be of service origin could have prejudiced defendant; and in this respect the instant case differs from the Searls Case, where the presumption as to service origin was made practically determinative of the issue."

In the United States v. Searls et al., 49 F.(2d) 224, 225, a case decided by the same court as that which decided the Wescoat Case, supra, the court, after discussing a similar instruction in the Wescoat Case, said:

"The remark of the judge made at the conclusion of reading this instruction and as his final word to the jury was as follows: 'I am frank to say that under such instructions I can see nothing for you to do but find a verdict for the plaintiffs.'"

The court, following this statement, gives a clear and full analysis of the World War Veterans' Act as amended in 1926 and 1930, and reaches the conclusion that this presumption referred to in the act never did apply to insurance cases.

With this distinction drawn between the Wescoat Case and the Searls Case, it is our opinion that, while this is error, that it is not prejudicial and is, therefore, not reversible error, and that the judgment of the lower court should be affirmed.