FILED
United States Court of Appeals
Tenth Circuit

December 19, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

CYNTHIA FELKINS,

      Plaintiff - Appellant,

v.

CITY OF LAKEWOOD,

      Defendant - Appellee.

No. 13-1415

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:11-CV-03390-MSK-KMT)**

---

Robert M. Liechty, Cross Liechty Lane PC, Greenwood Village, Colorado, for Plaintiff - Appellant

Alan Epstein (Thomas J. Lyons, Mark S. Ratner, and Matthew J. Hegarty, with him on the brief), Hall & Evans, L.L.C., Denver, Colorado, for Defendant - Appellee

---

Before **BRISCOE**, Chief Judge, **HARTZ** and **HOLMES**, Circuit Judges.

---

**HARTZ,** Circuit Judge.

---

Plaintiff Cynthia Felkins, formerly an emergency dispatcher for the City of Lakewood, Colorado, alleges that she suffers from a condition called avascular necrosis that qualifies as a disability under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (2012), and that the City refused to accommodate that disability. She brought suit against the City under the Act, but the district court granted the City summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm. Ms. Felkins's claim fails because she presented no expert medical evidence that any of her major life activities have been substantially limited by avascular necrosis.

## I. BACKGROUND

Avascular necrosis is a rare condition that can cause bone tissue to die from poor blood supply. Ms. Felkins alleges that she suffers from the condition and that she so informed the City during her initial interview for an emergency-dispatcher job when she told her interviewers that she could not lift more than ten pounds because of her condition.

Ms. Felkins began working for the City in October 2007, resigned a month later, but was then rehired in June 2008. In December 2008 her femur fractured while she was at work. According to Ms. Felkins, she was driven to the hospital by her supervisor, Jodi Malpass, and on the way she told Ms. Malpass that her femur broke because she suffers from "a bone disease that results in the death of bone tissue due to a lack of blood supply to the bone." Aplt. App. at 66.

2

After her surgery Ms. Felkins called Ms. Malpass, allegedly to explain that the procedure had been more complicated than anticipated and healing would be delayed. Later that day, Ms. Malpass emailed Ms. Felkins's other supervisors, writing that the surgery "went well" and that the doctors repaired Ms. Felkins's femur using bone from a cadaver. *Id.* at 70. A physician assistant completed two forms related to Ms. Felkins. The first was a Family and Medical Leave Act (FMLA) document (though Ms. Felkins was not eligible for FMLA benefits) indicating that Ms. Felkins had received hospital care but did not have a chronic condition. The second was a note stating only "Return to work full duty 1/7/09." *Id.* at 37.

Ms. Felkins returned to work in early January 2009, using crutches or a wheelchair to get around as her femur healed. The healing femur caused significant pain. Consequently, Ms. Felkins and Ms. Malpass agreed that Ms. Felkins would work up to a full ten-hour shift gradually, starting with four hours per day and increasing the number of hours over time. In late February Ms. Felkins met with all three of her supervisors, including Ms. Malpass, to further discuss her pain issues. At no time did Ms. Felkins request a disability accommodation in the form of reduced work hours, although she asserts that she had no reason to make the request because she believed that the City was aware of her disability and had already provided the reduced work hours as an accommodation. To support the accuracy of her belief, she states that Ms. Malpass knew that Ms. Felkins's ex-husband had to do the grocery shopping because Ms. Felkins could not, and that one of her supervisors knew she had handicapped plates on her car.

3

Between January and April 2009, Ms. Felkins missed a significant number of work hours. She never resumed a full ten-hour shift, making it only to eight hours. In early March she took a one-week vacation—though she alleges that the City approved. In late March she tripped over her dog and aggravated her femur injury, causing her to miss three days of work; and in early April she sustained a broken pelvis in a car accident, causing her to miss two more days of work.

On April 8 the City called and fired her. Ms. Felkins alleges that the City told her she was terminated because she had used too much leave, that she responded that she was willing to work a full shift to keep her job, and that the City did not pursue her offer. The City followed up with a termination letter, stating that Ms. Felkins was being fired because she had "used an inordinate amount of leave as a probationary employee" and had failed to "demonstrate[] the ability to consistently report for her shifts." *Id.* at 60–61. Included with the letter was a chart showing that Ms. Felkins had taken 466 hours of paid and unpaid leave since starting her job ten months earlier. *Id.* at 61. She states that the City never told her before she was fired that she needed to work more hours. The City does not appear to contest this. Nonetheless, the City maintains that its official policy requires emergency dispatchers like Ms. Felkins to work a ten-hour shift four days a week to meet minimum staffing requirements, and that a dispatcher's failure to do so burdens other employees and places the public at risk because of a decreased capacity to handle emergency calls.

After her termination Ms. Felkins filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) and received a right-to-sue letter. She filed her complaint in December 2011 in the United States District Court for the District of Colorado, alleging that the City had discriminated against her in violation of the ADA by failing to accommodate her disability of avascular necrosis. A year later Ms. Felkins moved for summary judgment on the issue of liability and submitted a declaration under penalty of perjury asserting that her avascular necrosis caused her femur to break. Shortly thereafter the City moved for summary judgment on both liability and damages, contending that Ms. Felkins had failed to demonstrate both that she has a disability and that the City discriminated against her on the basis of disability. Regarding the failure to prove a disability, it asserted that "[n]either the doctor's note allowing her to return to work, the FMLA paperwork filled out by Plaintiff's physician [assistant], nor her testimony, establish a recognizable disability under the ADA." *Id.* at 9–10 (citations to exhibits omitted). In response, Ms. Felkins submitted two declarations in which she asserted her disability from avascular necrosis. The City replied that she lacked the medical training to assess the cause of her broken femur.

The district court denied Ms. Felkins's motion and granted the City's, holding that (1) the only evidence of Ms. Felkins's disability was her own testimony, which was not enough to show that her alleged condition was substantially impairing, and (2) no evidence showed that Ms. Felkins requested—or the City offered—an accommodation for a disability as opposed to a temporary work-hour adjustment because of Ms. Felkins's

5

postsurgery pain.  *See Felkins v. City of Lakewood*, No. 1:11-cv-03390-MSK-KMT, 2013 WL 5200901, at \*5–6 (D. Colo. Sept. 13, 2013).

On appeal Ms. Felkins argues that she presented sufficient evidence of her disability and that the City failed to provide her an accommodation because of that disability.  Because we reject the first of her contentions, we have no need to address the second.

## II.   DISCUSSION

### A.   Standard of Review

"We review the district court's grant of summary judgment *de novo*."  *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1142 (10th Cir. 2009) (internal quotation marks omitted).  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In resisting summary judgment, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . affidavits or declarations."  *Id.* 56(c)(1).  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *Id.* 56(c)(4).

### B.   Evidence of Plaintiff's Disability

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability," 42 U.S.C. § 12112(a), including by "not making reasonable accommodations

6

to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity," *id.* § 12112(b)(5)(A). Thus,

> to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that [s]he (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability.

*EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011) (internal quotation marks omitted).

This case turns on the first prong—whether Ms. Felkins is a disabled person. Under the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Because Ms. Felkins does not contend that she had a record of an impairment or that the City regarded her as impaired, her sole claim is one for actual impairment under paragraph (A). Hence, she "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (internal quotation marks omitted). Among the major life activities in the ADA are walking, standing, and lifting,

7

and "the operation of a major bodily function, including . . . normal cell growth [and] . . . circulatory . . . function[s]." 42 U.S.C. § 12102(2).

In district court Ms. Felkins consistently identified her disabling impairment as avascular necrosis. Her complaint stated: "Ms. Felkins suffers from avascular necrosis . . . . Her *impairment* substantially limits her ability to do . . . major life activities . . . ." Aplt. App. at 2 ¶ 4 (emphasis added). Likewise, her motion for partial summary judgment stated that "[b]ecause of her avascular necrosis," she could not walk normally and her major bodily functions of normal cell growth and blood circulation were also substantially impaired. Pl.'s Mot. for Partial Summ. J. at 4, *Felkins*, No. 1:11-cv-03390-MSK-KMT (Nov. 13, 2012). And her response to the City's motion for summary judgment said that her "avascular necrosis substantially impairs her major bodily functions of normal cell growth and normal blood circulation," Aplt. App. at 53, and that her condition also substantially affected her lifting, walking, and standing. After this recitation the response concluded, "Clearly, her avascular necrosis was an ADA disability." *Id.* at 54.[1] Therefore, Ms. Felkins had to present sufficient evidence to prove

---

[1] In her reply brief on appeal, Ms. Felkins argues for the first time that her disabling impairment is, alternatively, her broken leg. But this is too late to raise an issue. *See Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1232 (10th Cir. 1997) ("Generally, an appellate court will not consider an issue raised for the first time on appeal."); *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("It is not sufficient to merely mention an issue in a reply brief. Issues not raised in the opening brief are deemed abandoned or waived.").

(1) that she has a condition (namely, avascular necrosis) (2) that substantially limits at least one of her five identified major life activities.[2]  We hold that she did not.

None of the medical evidence in the appellate record supports Ms. Felkins's allegation that she has avascular necrosis or details the degree to which it affects her major life activities.  After Ms. Felkins's surgery, a physician assistant filled out an FMLA form stating that Ms. Felkins did not have a chronic condition.  That same physician assistant later wrote a note stating only "Return to work full duty 1/7/09."  *Id.* at 37.  There is no mention of avascular necrosis, much less a description of its effects on Ms. Felkins.

That leaves only Ms. Felkins's own declarations.  She states that she has avascular necrosis and told others that she has the condition.  She also asserts that the condition caused her femur fracture, that it complicated her femur surgery, and that it caused her alleged difficulties walking, standing, and lifting.

Such lay evidence, however, is inadmissible in court and thus cannot be used to oppose summary judgment.  *See* Fed. R. Civ. P. 56(c)(4).  Ms. Felkins does not claim to be a medical expert, so her opinion testimony on a medical issue cannot be "based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.  For example,

---

[2] Ms. Felkins argues that the City concedes that she has avascular necrosis.  We do not think that is a fair characterization of the City's brief in this court.  But in any event it cannot be doubted that the City has vigorously argued that Ms. Felkins has not produced evidence of any substantial limitation of a major life activity caused by her alleged avascular necrosis.

"a lay witness with experience could testify that a substance appeared to be blood, but . . . [he] would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma." *Id.* advisory committee's note, 2000 Amendments. And we have said that a lay witness may testify to someone's "unusual, abnormal or bizarre conduct" and opine on his sanity, *United States v. Goodman*, 633 F.3d 963, 968– 69 (10th Cir. 2011) (internal quotation marks omitted), but not to his "manic depressive state," *United States v. Walshe*, 526 F. App'x 834, 839 (10th Cir. 2013) (emphasis omitted). Other examples from this court predate the Federal Rules of Evidence, but the common law that they apply matches Rule 701. *See Tome v. United States*, 513 U.S. 150, 160–61 (1995) (plurality opinion) ("Where the Rules [of Evidence] did depart from their common-law antecedents, in general the [Advisory] Committee said so."). In *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1957), we said:

> [W]here injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts, but . . . a lay witness is competent to testify concerning those physical injuries and conditions which are susceptible to observation by an ordinary person.

In that case a car-accident victim was held competent to testify about such matters as her difficulties focusing her left eye, her now-irregular menstrual cycle, and her children's postaccident nervousness, but not competent to testify that her son had suffered a punctured lung and two broken ribs or that her eye condition had been caused by the accident. *See id.* at 97–98. Similarly, we have held that a lay witness could testify to someone's night sweats, continuous coughing, and gradual weakening, *see United States*

10

*v. Monger*, 70 F.2d 361, 363 (10th Cir. 1934), but only an expert could testify to whether a patient's tuberculosis "is incipient or has been arrested," *United States v. McShane*, 70 F.2d 991, 996 (10th Cir. 1934).

These evidentiary principles apply, of course, to ADA claims. Ms. Felkins's declarations are admissible insofar as they describe her injuries and symptoms, such as pain and difficulties walking, standing, and lifting. They are inadmissible, however, insofar as they diagnose her condition as avascular necrosis or state how that condition causes limitations on major life activities, for those are clearly matters "beyond the realm of common experience and . . . require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (internal quotation marks omitted).

Ms. Felkins argues that the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553, lowered the standard of proof for disability claimants and relieves her of the obligation to provide expert testimony. The ADAAA conveyed "the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and . . . that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* § 2(b)(5), 122 Stat. at 3554. Thus, regulations implementing the ADAAA (though not yet in effect when Ms. Felkins was fired) provide that "[t]he comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general

11

population usually will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(v) (2011). We are not saying, however, that Ms. Felkins failed to show that her performance of a major life activity is significantly lower than that of others. Rather, the failure of proof on which our decision turns is that she has not provided proper evidence that any limitation she may have is *caused* by avascular necrosis.

Ms. Felkins also argues that the City concedes on appeal the admissibility of her declarations and that it did not timely raise its admissibility argument in district court. The first argument misrepresents the City's position. Its appellate brief first contends that Ms. Felkins's declarations are an attempt to create "a sham fact issue," in contradiction to her deposition testimony, *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986), a contention we need not address, and then contends that even assuming that they are not a sham, the declarations do not provide adequate evidence. Ms. Felkins misreads the assuming-not-a-sham sentence as a concession of admissibility.

As to the second argument, Ms. Felkins was on notice of the need to provide admissible evidence in district court. After she filed her motion for partial summary judgment and an accompanying declaration stating that her avascular necrosis caused her femur fracture, the City's motion for summary judgment challenged her status as disabled, stating: "No evidence in this matter indicates the femur fracture resulted from any disability. Neither the doctor's note allowing her to return to work, the FMLA paperwork filled out by Plaintiff's physician [assistant], nor her testimony, establish a recognizable disability under the ADA." Def. City of Lakewood's Mot. for Summ. J. at

12

4–5, *Felkins*, No. 1:11-cv-03390-MSK-KMT (Dec. 20, 2012) (citations to exhibits omitted). The City thus fulfilled its "initial responsibility of informing the district court of the basis for its motion," the absence of evidence establishing a fact on which the nonmovant had the burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). The City was not obligated to state what evidence *would* create a genuine issue of material fact. In response to the City's motion, it was Ms. Felkins's burden to "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for [her]." *Id.* (internal quotation marks omitted). This burden was not satisfied.

In short, Ms. Felkins has failed to present admissible evidence that she suffers from avascular necrosis that has caused any of her claimed limitations of walking, standing, and lifting, or of enjoying normal cell growth or circulatory function. The district court properly granted summary judgment.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

13