FILED
United States Court of Appeals
Tenth Circuit

May 4, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEVEN W. RUSSELL,

     Plaintiff - Appellant,

v.

PHILLIPS 66 COMPANY,

     Defendant - Appellee.
_____

AARP FOUNDATION; AARP,

     Amici Curiae.

No. 16-5063
(D.C. No. 4:15-CV-00087-CVE-PJC)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

    Steven Russell appeals the district court's grant of summary judgment to his

former employer, Phillips 66 Company, on his claim of discrimination under the

Americans with Disabilities Act. Russell claimed that Phillips discriminated against

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

him by terminating him without providing a reasonable accommodation.[1]  Russell argues on appeal that the district court erred in concluding that he failed to meet his prima facie case and in concluding, alternatively, that Phillips articulated a legitimate business reason for terminating Russell and he failed to show it was a pretext for discrimination.  We affirm the district court's judgment on the ground that Russell failed to meet his prima facie case and do not reach the district court's alternative holding.

## BACKGROUND

Russell began working for a predecessor company to Phillips in 1989 and over the years worked at several different jobs as the corporate structure changed.  In 2010, the corporate transportation department in which he had been working was dissolved and he was transferred to the finance department to work as a marine freight auditor.  Russell admitted he felt overwhelmed in the new job and struggled to perform as needed.  After eighteen months of mounting stress, Russell had what he described as a nervous breakdown on September 13, 2012.  He left work and, as it turned out, never returned.  He was eventually terminated a year later, on September 13, 2013.

---

[1]  Russell also brought claims for retaliation under both the ADA and the Family Medical Leave Act, as well as a claim for intentional infliction of emotional distress.  He does not challenge the district court's adverse rulings on these claims on appeal and so has waived appellate review of them.  *See United States v. Ibarra-Diaz*, 805 F.3d 908, 933 (10th Cir. 2015) (failure to raise issue in opening brief waives appellate review).

About a month after he left work, Russell began seeing a psychiatrist, Dr. McClure. Russell saw Dr. McClure every month and then every two months, from October 2012 to March 2014. In February 2013, Dr. McClure completed an Employee Health Report for Phillips concerning Russell's status and ability to return to work. The report didn't include a diagnosis, but did give Dr. McClure's prognosis that Russell was "unlikely to return to old position, recommend RTW [return to work] @ new position." Aplt. App. Vol. II at 299. Dr. McClure checked the box indicating that Russell could return to modified duty. He indicated that Russell had not yet reached maximum medical improvement and that he had a permanent restriction beginning March 1, 2013. But Dr. McClure didn't identify any specific restriction. Instead, he simply wrote the following comment in the box designated for additional comments: "RTW—but approved for different dept/position than current only." *Id.*

After receiving Dr. McClure's Employee Health Report, the chief medical officer for Phillips, Dr. Parsons, sent Russell a letter stating that Dr. McClure's report "does not provide reasonable documentation pertaining to your functional limitations and the need for accommodation is not obvious." *Id.* at 232. The letter asked Russell to work with his provider to respond to the following questions:

- What is the nature, severity, and duration of the impairment as it relates to your current position and/or positions that may or may not be available? (See attached job description).

- What specific activity or activities does the impairment limit?

3

- To what extent does the impairment limit your ability to perform the activity or activities listed?

*Id.*

Six weeks later, Dr. McClure sent Phillips a short letter, apparently in response to Dr. Parson's request for further information. The letter stated:

> My name is Bradley A. McClure, MD. I am a board certified psychiatrist who is treating Steven Russell, since 10/16/2012. I have diagnosed Mr. Russell with Major Depressive Disorder and Panic Disorder, and at this point he is showing good progress with regards to his recovery, and I believe it would be therapeutic for him to return to full time employment at this time. Work related stress did play a role in his initial disability, and much of this stemmed from the fact that he felt overwhelmed in his last position due to the requirement to do moderately complicated math and accounting work as part of his last position. I believe that Mr. Russell likely has some degree of cognitive limitation that makes doing moderate level math and accounting work beyond his abilities, although I believe he could be competent at other management or planning related positons. To return to his former position would likely trigger a decomposition, whereas returning to work within a new position and different department would have a high rate of likely success, and in fact be therapeutic for him. This is why I am recommending he return to work full time in a new positon within a different department if possible.

*Id.* at 233.

Several days later, on April 11, 2013, Phillips received an Employee Health Report from Russell's counselor, Deborah Lieb, MHR, LPC. Like Dr. McClure, Ms. Lieb checked the box for release to modified duty. She didn't indicate whether Russell had reached maximum medical improvement, but she did indicate that Russell had a permanent restriction beginning April 11, 2013. Like Dr. McClure, she didn't identify any specific restriction, writing only "RTW—but approved for different dept position than current one" in the box for additional comments. *Id.* Vol. III at 490.

4

After receiving Dr. McClure's letter, Dr. Parsons called Dr. McClure to get further clarification about Russell's impairments and possible limitations. Based on his conversation with Dr. McClure, Dr. Parsons understood that Russell's inability to do the math and accounting required by his job, which Dr. McClure had indicated contributed to Russell's stress, was not the result of any mental or physical impairment. The medical department then advised Human Resources that Russell was released to return to work as of April 11, 2013. Human Resources was told that Russell didn't have any medical restrictions that prevented him from returning to his job as a marine freight auditor, but he did have non-medical restrictions that prevented him from doing so, namely he lacked the analytical abilities required by his current job.

Human Resources subsequently informed Russell that because he had indicated on several prior occasions that he didn't wish to return to his position as a marine freight auditor, the company intended to fill his position. In May 2013, Human Resources informed him that Phillips had posted his position and expected it to be filled but that, while there didn't appear to be any openings in the finance department that didn't require the same math and accounting skills as his prior job, he was encouraged to apply for other positions within the company. Russell was given seven weeks—the remainder of his accrued vacation leave—to find another job or face termination. Phillips subsequently granted Russell two extensions of time to allow him to apply for positions that were coming open soon. In September 2013, having unsuccessfully applied for six open positions, Russell was terminated.

5

Russell then sued Phillips contending, as relevant here, that Phillips discriminated against him on the basis of a disability by terminating him without offering him a reasonable accommodation, namely transfer to a position outside the finance department.

**DISCUSSION**

**I. Summary Judgment Standards**

We review the district court's grant of summary judgment de novo and, like the district court, apply the legal standard in Fed. R Civ. P. 56(a). *See Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 895 (10th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view the evidence and draw reasonable inferences in the light most favorable to [Russell], the nonmoving party." *Williams*, 849 F.3d at 895. Nonetheless, "[f]or dispositive issues on which [he] will bear the burden of proof at trial, [Russell] must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Cardosa v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (fourth alteration in original). "[F]ailure of proof of an essential element renders all other facts immaterial." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1212 (10th Cir. 2000).

A party opposing summary judgment "need not produce evidence in a *form* that would be admissible at trial, but the content or substance of the evidence must be

6

admissible." *Thomas v. Int'l Bus. Machines,* 48 F.3d 478, 485 (10th Cir. 1995) (citation omitted) (internal quotation marks omitted). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id.* 56(c)(2). As we discuss below, Phillips challenged the competency of much of the evidence Russell sought to use to demonstrate a genuine issue of material fact.

## II. Prima Facie Case of Disability Discrimination

To establish a prima facie case of disability discrimination under the ADA, Russell had to demonstrate that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer . . . because of that disability." *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (internal quotation marks omitted). The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

For purposes of this appeal, we are concerned only with the definition of an actual disability in § 12102(1)(A).[2] To show he has an actual disability, Russell "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Felkins*, 774 F.3d at 650; *see also* 29 C.F.R. § 1630.2 (j)(1)(ii) ("An impairment is a disability within the meaning of [§ 1630.2] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."). In the district court, Russell identified depression and panic disorder as his impairment, and he states on appeal that his "major depressive disorder involved acute episodic panic attacks and anxiety," Aplt. Opening Br. at 3. We will use the term "depression" to refer to the full scope of his impairment. In response to summary judgment, Russell identified four major life activities (MLAs) that he said were affected by his depression: (1) sleeping, (2) breathing, (3) concentrating, and (4) working. On appeal, he addresses only the first three, so he has waived any issue relating to the MLA of working. *See United States v. Ibarra-Diaz*, 805 F.3d 908, 933 (10th Cir. 2015) (failure to raise issue in opening brief waives appellate review).

Phillips does not dispute that depression is a recognized impairment or that the three activities Russell has identified are considered MLAs under 29 C.F.R.

---

[2] In the district court, Russell contended that he both had an actual disability and was regarded as having one. On appeal, however, he does not challenge the district court's determination that he failed to establish the prima facie case for a "regarded as" claim. He has therefore waived appellate review of that ruling.

§ 1630.2(i)(1)(i). And the record contains competent evidence from Dr. McClure diagnosing Russell with depression as of October 10, 2012.[3] But the question remains whether Russell showed that his depression significantly limited his sleeping, breathing, or concentrating. This required him to show both that his depression caused the limitation and that the limitation was significant. *See Felkins*, 774 F.3d at 652-53. The district court determined that Russell failed to make this required showing as to any MLA he identified.

### A. MLA of Sleeping

In the affidavit he filed in response to summary judgment, Russell stated that one of the medications he took for his depression, which he didn't identify, caused him to experience insomnia. "[N]egative side effects of medication . . . may be considered when determining whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(4)(ii). But Phillips argued that Russell's affidavit isn't competent evidence of a causal connection between his medication and insomnia because he isn't a medical expert.

Lay evidence on an issue requiring medical expertise is inadmissible and can't be used to oppose summary judgment. *Felkins*, 774 F.3d at 651. Thus, we held in *Felkins* that the plaintiff's statements were admissible "insofar as they describe her injuries and symptoms, such as pain and difficulties walking, standing, and lifting," but they were inadmissible "insofar as they diagnose her condition . . . or state how

---

[3] Not only did Dr. McClure state in his letter to Phillips that he had diagnosed Russell with depression and panic disorder, but his treatment notes contain a diagnosis of depression and anxiety at every visit.

9

that condition causes limitations on major life activities, for those are clearly matters beyond the realm of common experience and . . . require the special skill and knowledge of an expert witness." *Id.* at 652 (second alteration in original) (internal quotation marks omitted). We therefore agree with Phillips that Russell's affidavit isn't competent evidence that his insomnia was caused by a medication he took for depression. That causal connection requires a medical judgment.

Beyond the Employee Health Reports and letter previously described, the only medical records Russell provided were Dr. McClure's treatment notes. They reflect that on his first visit to Dr. McClure, Russell told Dr. McClure that he was then taking Cymbalta and that it was causing him to have trouble sleeping some nights, either when first falling asleep or after getting up during the night to go to the bathroom.[4] Dr. McClure wrote "insomnia" in the space in his notes for recording side effects of medications, and at the conclusion of the visit he wrote that the Cymbalta should be discontinued. Aplt. App. Vol. II at 378, 379. Dr. McClure prescribed the anti-depressant Viibryd and consistently recorded in his treatment notes thereafter that there were no side effects clearly related to any of the medications he prescribed.[5] To the extent Dr. McClure's notation of "insomnia" as a side effect at Russell's first visit may be seen as connecting Russell's use of

---

[4] Because Russell didn't produce any medical evidence predating his first visit with Dr. McClure on October 10, 2012, there is no evidence in the record about who prescribed Cymbalta, why it was prescribed, or when it was prescribed.

[5] Dr. McClure also prescribed several different medications during the treatment period for anxiety and insomnia.

Cymbalta with his sleep problems, it is not sufficient to raise a genuine issue of material fact as to whether Russell's depression caused his sleep problems. There was no evidence in the record that Russell had been diagnosed with depression before he first saw Dr. McClure[6] and no evidence that he had been prescribed Cymbalta to treat it.

Further, while Dr. McClure prescribed various sleep aids for Russell, he never indicated in his treatment notes that Russell's depression caused his insomnia. In their amicus brief, the AARP and AARP Foundation contend that insomnia is a common symptom of major depressive disorder. But there is no record evidence of this connection, and Russell has never made this argument. He has argued only that his insomnia was a side effect of an unnamed medication that he took for depression.[7] Under these circumstances, the district court didn't err in concluding that Russell

---

[6] Although Russell stated in his affidavit that he had suffered from depression and anxiety for ten years, his statement is not competent evidence of a diagnosis, and the record contains no evidence of a diagnosis of depression before October 10, 2012.

[7] Nor is there evidence that Russell's ability to sleep was substantially limited. He told Dr. McClure on his first visit that he didn't have sleep issues before he left his job, which was less than a month earlier, and the record does not reflect how long it was after he stopped working that his sleep problems began. While there is no durational requirement for a limitation when assessing an actual disability, 29 C.F.R. § 1630.2(j)(1)(ix) (six-month "transitory" exception does not apply to "actual disability" claims), Russell nonetheless had to show that his sleep was substantially limited "as compared to most people in the general population," *id.* § 1630.2(j)(1)(ii). Many people suffer occasional sleep disturbances. Without any evidence of how long Russell had been having problems falling back to sleep after waking to go to the bathroom a few nights a week, there was no evidence with which to compare his ability to sleep to that of most people in the general population.

11

failed to demonstrate a genuine issue of fact as to whether his depression caused a substantial limitation in the MLA of sleeping.

**B. MLA of Breathing**

The record contains no evidence about any limitations in Russell's breathing beyond his affidavit in which he said that "[d]uring times of high anxiety, I suffer from . . . difficulty breathing," Aplt. App. Vol. III at 491, and his statement to Dr. McClure at his first visit that when he had his self-described nervous breakdown at work, his "breath [got] shorter," *id.* Vol. II at 378. While there are later references in Dr. McClure's notes to Russell experiencing spikes of anxiety, there is no further mention of any shortness of breath. The district court concluded there was no evidence that Russell's depression substantially limited his ability to breathe. And as Phillips correctly argued, Russell wasn't competent to provide evidence that his depression caused his shortness of breath. And Dr. McClure's treatment notes don't make that causal connection.[8] Again, the district court didn't err in concluding that Russell failed to demonstrate a genuine issue of material fact as to whether his depression caused a substantial limitation in his breathing.

**C. MLA of Concentrating**

The record contains little evidence of any limitation on Russell's ability to concentrate. Russell said in his affidavit that "[d]uring times of high anxiety" he

---

[8] Nor does the evidence show that Russell's breathing was substantially limited. His conclusory statements that he had difficulty breathing and that his breath got shorter when he had his breakdown provide no basis for comparing his breathing to that of most people in the general population.

suffers "trouble concentrating," *id.* Vol. III at 491, but there are no references in

Dr. McClure's notes to any concentration problems. Russell points to his April 30,

2013, visit when he told Dr. McClure that "his thinking was foggy for awhile" after

he learned that Phillips intended to terminate him if he wasn't able to find another

job. *Id.* Vol. II at 387. But "foggy" thinking and a lack of concentration aren't

necessarily the same. And, in any event, the record contains no competent evidence

that his depression caused this "foggy" thinking.[9]

On appeal, Russell attempts to tie Dr. McClure's statement that Russell

couldn't do moderate level math or accounting due to limited cognitive abilities to

his alleged difficulty concentrating. Russell contends that he "was having trouble

concentrating, which led to trouble processing information, which then led to errors

in accounting. [Russell's] medical records tie these issues in with cognitive

limitations resulting from [Russell's] depression." Aplt. Opening Br. at 7. But not

only did Russell fail to make this argument in the district court, it has no support in

the record. Nothing in Dr. McClure's letter to Dr. Parsons or in his treatment notes

suggests that Russell's depression caused any cognitive limitations or otherwise

affected his ability to do math or accounting.

---

[9] Nor does Russell's limited evidence show that his ability to concentrate was substantially limited. His use of the amorphous phrase "trouble concentrating" provides no basis for comparing his ability to concentrate with that of most people in the general population.

## CONCLUSION

To proceed on his claim against Phillips for disability discrimination in terminating him rather than providing a reasonable accommodation, Russell first had to establish that he had a disability within the meaning of the ADA. To do so, he had to show that any limitation he had was *caused by* his depression. *See Felkins*, 774 F.3d at 652-53. But Russell produced no competent evidence of the required causal link and thus failed to demonstrate a genuine issue of material fact as to whether he was disabled. The district court therefore properly granted summary judgment to Phillips.

Affirmed.

Entered for the Court


Nancy L. Moritz
Circuit Judge