FILED
United States Court of Appeals
Tenth Circuit

June 16, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PAUL LEVY,

     Plaintiff - Appellant,

BRENDA UMHOLTZ; TINA BRUCE,

     Plaintiffs,

v.

KANSAS DEPARTMENT OF
SOCIAL AND REHABILITATION
SERVICES,

     Defendant - Appellee.

No. 14-3061

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 5:11-CV-04018-JAR)**

Alan V. Johnson of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C.,
Topeka, Kansas, for Plaintiff-Appellant.

Gregory A. Lee, (Jenna R. Seematter, with him on the brief), of Cooper & Lee,
LLC, Topeka, Kansas, for Defendant-Appellee.

Before **BRISCOE,** Chief Judge, **MURPHY** and **GORSUCH**, Circuit Judges.

**BRISCOE**, Chief Judge.

Paul Levy alleges that he was constructively discharged from the Kansas Department of Social and Rehabilitation Services (SRS) in retaliation for advocating for better accommodation for a disabled co-worker. He filed retaliation claims against SRS under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. The district court granted summary judgment to SRS on both claims, concluding that SRS was entitled to sovereign immunity on Levy's ADA claim and that Levy's Rehabilitation Act claim was barred by the statute of limitations. Levy appeals from that decision. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's dismissal of his claims.

## I

### A.  Factual background

Paul Levy was hired as a rehabilitation counselor in the Wichita office of SRS in 2001. In December 2008, Levy agreed to serve as a counselor for a co-worker in his office, Tina Bruce, who had requested a vocational assessment to determine whether her disability (blindness) was being fully accommodated. Levy ordered the assessment from a contractor, Brenda Umholtz, who had done extensive work for both Levy and Bruce at SRS. Umholtz's report stated that Bruce was not receiving adequate accommodation for her blindness and could not compete on an "'equal-playing field' as her . . . counterparts even within her office." App. at 73. The report also noted that Bruce was "protected by A.D.A.

2

laws regarding accommodations that dictate that she cannot be fairly evaluated until such accommodations are consistently available, in working order during her entire work hours." Id.

On February 20, 2009, SRS department director Michael Donnelly sent Levy a letter proposing Levy's termination. The stated reason for Levy's termination was a violation of the department's conflict of interest policies. Donnelly stated that Umholtz's report contained "numerous sweeping legal opinions and inflammatory statements" that made the conflicts of interest between Levy, Bruce, and Umholtz apparent. Id. at 110. Donnelly's letter also contained several other instances of allegedly inappropriate conduct by Levy during the course of his employment. Levy was given the opportunity to appear in person to respond to the allegations on February 24, 2009.

Levy stated in interrogatories that he met with Donnelly on February 12, 2009, prior to receiving the termination letter. Levy stated that he told Donnelly at the meeting that other counselors in the division had served as counselors for co-workers without being punished. He also noted that he informed his supervisor about opening Bruce's case in January 2009—"prior to any substantial services being delivered"—and that he transferred Bruce's case to his supervisor immediately when asked to do so. Id. at 140, 143. Levy stated that prior to the February 24th meeting, he asked whether it would be possible for him to resign instead of being terminated. However, Levy said that he did not officially resign

3

until February 25, 2009, after it became clear in his February 24th meeting that Donnelly was planning to terminate him regardless of what he said at the meeting.

## B.  Procedural background

Umholtz filed suit against SRS on February 11, 2011.  Levy joined the suit on March 2, 2011, and Bruce joined shortly thereafter.  In the Second Amended Complaint, Levy alleged that SRS had retaliated against him in violation of the ADA.  Levy requested reinstatement, compensatory damages in excess of $100,000, and attorneys' fees and other litigation expenses.  The plaintiffs later amended their complaint to add Rehabilitation Act claims for Bruce and Levy, and SRS agreed not to oppose the amendment in exchange for the plaintiffs' agreement that SRS had not waived its sovereign immunity defense.

On March 23, 2012, SRS filed for summary judgment on all of Levy's claims.  Among other arguments, SRS contended that Levy's ADA claim was barred by the Eleventh Amendment because the Supreme Court had determined in Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), that Congress had not constitutionally abrogated a state's immunity from employment discrimination suits under Title I of the ADA.  Although retaliation claims fall under Title V of the ADA, SRS argued that a retaliation claim based on alleged Title I discrimination rendered it subject to the Garrett decision.

SRS also argued that Levy's Rehabilitation Act claim was barred by the statute of limitations.  Congress did not specify a federal statute of limitations for

4

the Rehabilitation Act, but SRS noted that this circuit concluded that

Rehabilitation Act claims resemble § 1983 claims and that both types of claims

can best be analogized to claims for injury to personal rights, for which Kansas

imposes a two-year statute of limitations. See Baker v. Bd. of Regents of Kan.,

991 F.2d 628, 630-32 (10th Cir. 1993) (citing Wilson v. Garcia, 471 U.S. 261,

276-77 (1985), which affirmed the Tenth Circuit's characterization of § 1983

claims as similar to personal injury claims for the purpose of applying an

appropriate state statute of limitations). Because Levy resigned or was terminated

in February 2009 and did not join Umholtz's suit until March 2011, SRS

contended that his claims were time-barred. Levy argued in response that SRS

waived its Eleventh Amendment immunity for ADA claims by accepting federal

funds, and that Rehabilitation Act claims are more appropriately categorized as

statutorily created rights governed by Kansas's three-year statute of limitations.

The district court ruled that SRS was entitled to summary judgment on

Levy's ADA claim because the claim against SRS was barred by sovereign

immunity. Specifically, the district court concluded that SRS did not waive its

sovereign immunity for ADA claims through a waiver provision in the

Rehabilitation Act enacted four years prior to the ADA. That provision required

states who accept federal funds to waive their sovereign immunity for claims

under the Rehabilitation Act, Title IX of the Education Amendments Act of 1972,

the Age Discrimination Act of 1975, Title VI of the Civil Rights Act of 1964 "or

5

the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."  42 U.S.C. § 2000d-7(a)(1).  The district court noted that the Supreme Court's ruling in Garrett only discussed whether Congress had validly abrogated state sovereign immunity under Title I of the ADA (and by implication, Title I-based claims under Title V) and not whether a state had waived its immunity.  Nonetheless, the district court concluded that the waiver provision in the Rehabilitation Act was not sufficient to meet the "stringent" test for whether a state, by accepting federal funds, has made a clear and voluntary waiver of its sovereign immunity for ADA claims.

The district court also concluded that Levy's claims under the Rehabilitation Act were untimely because this court's precedent analogizes Rehabilitation Act claims to claims for injury to personal rights under Kansas law and applies the state's two-year statute of limitations.  See Baker, 991 F.2d at 631-32.  It is undisputed that Levy filed his claim more than two years after being discharged.  The district court declined to rule on SRS's other arguments.

## II

### A.  Subject matter jurisdiction

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1331.  Although SRS does not challenge the court's subject-matter jurisdiction on appeal, there was initially some debate as to whether it was appropriate to permit Levy and Bruce to add Rehabilitation Act claims when their initial claims

6

under the ADA were ultimately barred by sovereign immunity. The district court noted that sovereign immunity is often equated with a lack of subject-matter jurisdiction, but "the equation is more of an approximation" because sovereign immunity can be waived, and courts are not required to raise the issue sua sponte. App. at 157-58 (citing Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1998)). Because SRS did not "effectively raise" its immunity until its motion for summary judgment, which was filed *after* the district court had already permitted Levy and Bruce to add their Rehabilitation Act claims, the district court concluded that it had subject-matter jurisdiction. Id. at 158 (citing Harris v. Owens, 264 F.3d 1282, 1288 (10th Cir. 2001) ("Once *effectively raised*, the Eleventh Amendment becomes a limitation on our subject-matter jurisdiction") (emphasis added)).

Such a conclusion is consistent with how other courts view the interplay between amendments to complaints and the assertion of a sovereign immunity defense. Cf. Mills v. State of Me., 118 F.3d 37, 53 (1st Cir. 1997) (denying a party the right to amend its complaint on appeal to create subject-matter jurisdiction in a sovereign immunity case, but noting the plaintiff "had an opportunity to seek to amend its pleadings in the district court"); Oliver Sch., Inc. v. Foley, 930 F.2d 248, 252 (2d Cir. 1991) ("We take issue, however, both with the court's refusal to construe the complaint as asserting claims against the individual defendants in their personal capacities and with its refusal to allow

7

Oliver to amend the complaint to assert such claims unequivocally."). We agree

with the district court that Levy and Bruce successfully added Rehabilitation Act

claims to their complaint prior to SRS raising a sovereign immunity defense.

## B. Standard of review

"We review the grant of summary judgment de novo applying the same

standard as the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998). "Summary judgment is proper if the movant demonstrates that

there is 'no genuine issue as to any material fact' and that it is 'entitled to a

judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

## C. ADA claim and sovereign immunity

Generally, states and their agencies are protected from suit by sovereign

immunity, as guaranteed by the Eleventh Amendment. "The ultimate guarantee of

the Eleventh Amendment is that nonconsenting States may not be sued by private

individuals in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S.

356, 363 (2001). However, there are three exceptions to the Eleventh

Amendment's guarantee of sovereign immunity to states:

> First, a state may consent to suit in federal court. Second, Congress may
> abrogate a state's sovereign immunity by appropriate legislation when it
> acts under Section 5 of the Fourteenth Amendment. Finally, under Ex parte
> Young, 209 U.S. 123 (1908), a plaintiff may bring suit against individual
> state officers acting in their official capacities if the complaint alleges an
> ongoing violation of federal law and the plaintiff seeks prospective relief.

Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1166 (10th Cir. 2012)

8

(internal citations omitted and altered).

In Garrett, the Supreme Court held that Congress did not validly abrogate sovereign immunity for employment discrimination claims made against states under Title I of the ADA. 531 U.S. at 374. However, the Supreme Court later concluded that states can be sued on claims of discrimination in the provision of public services under Title II of the ADA when states actually violate the Fourteenth Amendment or when such services implicate fundamental constitutional rights. See United States v. Georgia, 546 U.S. 151, 159 (2006); Tennessee v. Lane, 541 U.S. 509, 533 n.20 (2004). The Court has not ruled on whether Congress abrogated sovereign immunity for retaliation claims under Title V of the ADA, but many courts have distinguished between retaliation claims that stem from Title I employment discrimination and Title II discrimination in the provision of public services. See, e.g., Demshki v. Monteith, 255 F.3d 986, 988 (9th Cir. 2001) ("We . . . conclude that the Court's holding necessarily applies to claims brought under Title V of the ADA, at least where . . . the claims are predicated on alleged violations of Title I."); Collazo-Rosado v. Univ. of Puerto Rico, 775 F. Supp. 2d 376, 386-87 (D.P.R. 2011); Chiesa v. N.Y. State Dep't of Labor, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009); Sarkissian v. W. Va. Univ. Bd. of Governors, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *8 (N.D.W. Va. May 3, 2007) (concluding that the discharge of a medical resident fell under Title II because it is "more akin to a program of higher education than an employment

9

position"); Cisneros v. Colorado, No. CIV.A.03CV02122WDMCB, 2005 WL 1719755, at *6 (D. Colo. July 22, 2005); Shabazz v. Texas Youth Comm'n, 300 F. Supp. 2d 467, 472-73 (N.D. Tex. 2003).

However, Levy does not argue that Congress abrogated state sovereign immunity for employment discrimination-based retaliation claims under the ADA. Rather, Levy's primary argument on appeal is that SRS has *waived* its sovereign immunity by accepting federal funds. In particular, he argues that the waiver provisions of the Rehabilitation Act, which we have upheld as valid, similarly apply to the ADA because the Rehabilitation Act and ADA are closely linked. Aplt. Br. at 9-11 (citing Robinson v. Kansas, 295 F.3d 1183, 1189-90 (10th Cir. 2002)). The Rehabilitation Act's waiver provision, enacted pursuant to Congress's Spending Clause power, states:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794], title IX of the Education Amendments of 1972 [20 U.S.C. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1).

Levy argues that "[t]he waiver provision in § 2000d-7 likewise applies to a retaliation claim under § 12203(a) of the ADA because § 12203 is expressly incorporated into section 504 of the Rehabilitation Act." Aplt. Br. at 11. Section

10

504 reads:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 et seq.) and the provisions of sections 501 through 504, and 510, [1] of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12201-12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d). Levy is correct that the Rehabilitation Act and the ADA are closely linked, and that the ADA was intended to build on the Rehabilitation Act. See Charles R. Richery, 1 Manual on Employment Discrimination § 6:1 (updated February 2015). However, the close relationship between the two statutes is not sufficient to conclude that the Rehabilitation Act's waiver provisions apply by implication to the ADA. Section 504 of the Rehabilitation Act applies the same standards as a retaliation claim under § 12203(a) of the ADA to determine whether a violation exists, but the statutes were enacted for slightly different purposes and under wholly different provisions of the Constitution. See Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1174-75 (11th Cir. 2003) (noting that the ADA was enacted pursuant to the Fourteenth Amendment and the Rehabilitation Act was enacted pursuant to the Spending Clause).

The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985). "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, or else if the State makes a 'clear

11

declaration' that it intends to submit itself to our jurisdiction." Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76 (1999) (internal citations and quotation marks omitted). "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" Edelman v. Jordan, 415 U.S. 651, 673 (1974) (citing Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)).

Although Levy's argument is novel, we must reject it and agree with the Supreme Court when it stated that Congress "does not . . . hide elephants in mouseholes." Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001). The same logic that the Court applied in Whitman with regard to changes in the Clean Air Act's regulatory scheme applies with equal force to the Eleventh Amendment waiver issue in this case. For a waiver of sovereign immunity to be "knowing and voluntary," it cannot be hidden in another statute and only applied to the ADA through implication. At best, there may be an argument that the ADA falls into the residual clause of the Rehabilitation Act's waiver for violations of "the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7. Cf. Sossamon v. Texas, 131 S. Ct. 1651, 1662 (2011) (analyzing whether the Religious Land Use and Institutionalized Persons Act qualified as a "statute prohibiting discrimination"

12

under the assumption that "a residual clause like the one in [42 U.S.C. § 2000d-7] could constitute an unequivocal textual waiver"). However, as other courts have noted, the ADA has a much broader focus than discrimination by recipients of federal financial assistance. See, e.g., Panzardi-Santiago v. Univ. of Puerto Rico, 200 F. Supp. 2d 1, 9 (D.P.R. 2002) ("Panzardi does not direct the Court to any language in the ADA that represents an unequivocal indication by Congress that states in accepting funds, in general from the federal government, do so on condition that they have knowingly waived their Eleventh Amendment protection."). Indeed, the expansion of liability is one of the primary differences between the ADA and Rehabilitation Act. See, e.g., Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 974 (10th Cir. 2002) ("Unlike the blanket involuntary coverage of the ADA, however, the Rehabilitation Act's coverage extends only to entities that choose to receive federal assistance."); Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169, 1180 (9th Cir. 1999) ("Unlike the Rehabilitation Act, Title II applies to all public entities, whether or not they receive federal financial assistance. Thus, in some respects, it is true that Congress broadened the provisions of the Rehabilitation Act in Title II.").

Moreover, no court has concluded that the Rehabilitation Act's waiver provisions apply to the ADA. See Fields v. Dep't of Pub. Safety, 911 F. Supp. 2d 373, 379 (M.D. La. 2012); Swart v. Colo. Dep't of Corr., No. CIV.A. 07-CV-02718LT, 2009 WL 230699, at *2 (D. Colo. Jan. 30, 2009) ("Not surprisingly,

13

Plaintiff has cited no authority for the proposition that [the waiver] provision of the Rehabilitation Act is applicable to claims under the ADA or that it overrides the clear holding of Garrett that states are immune to ADA claims for money damages by employees."); Dansby-Giles v. Jackson State Univ., 638 F. Supp. 2d 698, 700-01 (S.D. Miss. 2009); Gary v. Ga. Dep't of Human Res., 323 F. Supp. 2d 1368, 1372 (M.D. Ga. 2004) ("The acceptance of federal funds does not constitute a state's waiver of Eleventh Amendment immunity for alleged violations of Title I of the ADA."); Sanders ex rel. Rayl v. Kan. Dep't of Soc. & Rehab. Servs., 317 F. Supp. 2d 1233, 1242 & n.2 (D. Kan. 2004) (concluding that the Rehabilitation Act's waiver applies solely to § 504 claims and not ADA or § 1983 claims).

Lastly, the district court noted that the ADA was passed after the Rehabilitation Act's waiver provisions. Congress could have included a similar waiver provision in the ADA or added the ADA to the list of nondiscrimination statutes in the Rehabilitation Act's waiver provisions, but it did not. 42 U.S.C. § 2000d-7(a)(1). In the absence of clear evidence that Congress intended for states to waive their immunity under the ADA by accepting federal funds,[1] we will not stretch the language of the Rehabilitation Act to conclude that SRS has

---

[1] In fact, the broad abrogation provisions invalidated under Garrett would suggest that Congress did not intend to condition a state's receipt of federal funds on a waiver of sovereign immunity for ADA claims.

14

made a clear and voluntary waiver of its sovereign immunity for ADA claims. Cf. Schrader, 296 F.3d at 974 (concluding that the 1992 addition of § 794(d) to the Rehabilitation Act did not limit the definition of employer under the Act to the definition provided under the ADA because "[h]ad this been the intent of Congress, it surely would have been explicit on this significant change").

## D.  Statute of limitations for Rehabilitation Act claims in Kansas

For federal causes of action created prior to 1990 for which "Congress has not established a time limitation for a federal cause of action, the settled practice [is] to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). The district court relied on Baker v. Board of Regents of Kansas, 991 F.2d 628, 631-32 (10th Cir. 1993), to conclude that Rehabilitation Act claims are subject to a two-year statute of limitations borrowed from Kan. Stat. Ann. § 60-513 and that Levy's claims were therefore time-barred.  In Baker, we concluded that the two-year statute of limitations for claims for injury to personal rights under Kan. Stat. Ann. § 60-513(a)(4)[2] was most appropriate for Rehabilitation Act claims.  991 F.2d at 631-32.  "Section 504 of the Rehabilitation Act protects an individual with handicaps from discrimination. . . . Because a section 504 claim is closely

---

[2] Kan. Stat. Ann. § 60-513(a)(4) provides: "(a) The following actions shall be brought within two years: . . .
(4) An action for injury to the rights of another, not arising on contract, and not herein enumerated."

15

analogous to section 1983, we find that section 504 claims are best characterized as claims for personal injuries." Id.

Levy argues on appeal that Baker is confusing because it makes repeated reference to Kan. Stat. Ann. § 60-512,[3] which details when a three-year statute of limitation applies in Kansas. He also argues that Kansas caselaw supports the application of Kan. Stat. Ann. § 60-512 to Rehabilitation Act claims because such claims involve statutorily created rights. Aplt Br. at 14-15 (citing Burnett v. Sw. Bell Tel., 151 P.3d 837, 847 (Kan. 2007) (concluding that the three-year statute of limitations from Kan. Stat. Ann. § 60-512 applied to ERISA claims because such claims were created by statute)).

Although Levy is correct that Baker makes two incorrect references to Kan. Stat. Ann. § 60-512, the opinion itself is not confusing as to which statute we intended to apply. We spent several pages discussing both (1) why the injury to personal rights analogy is the most appropriate for Title VI and Rehabilitation Act claims, and (2) why characterizing § 1983, Title VI, and Rehabilitation Act claims similarly for purposes of a statute of limitations "promotes a consistent and uniform framework by which suitable statutes of limitations can be determined for civil rights claims." 991 F.2d at 630-32. We also repeatedly

---

[3] Kan. Stat. Ann. § 60-512 provides: "The following actions shall be brought within three (3) years: . . .
(2) An action upon a liability created by a statute other than a penalty or forfeiture."

16

stated that the two-year limitations period for claims for injury to personal rights under Kansas law applies and we cite the correct statute (Kan. Stat. Ann. § 60-513(a)(4)) three times. Id. Lastly, we purported to affirm the district court regarding the applicable statute of limitations, id., which had unequivocally concluded that Kan. Stat. Ann. § 60-513(a)(4) applied. See Baker v. Bd. of Regents of Kan., 768 F. Supp. 1436, 1438 (D. Kan. 1991). In short, although the incorrect references to Kan. Stat. Ann. § 60-512 are perplexing, the Baker opinion overall is clear that we were applying the two-year statute of limitations for claims for injury to personal rights found at Kan. Stat. Ann. § 60-513(a)(4).

Levy's second argument is somewhat more persuasive, as Kansas courts have explicitly characterized employment discrimination claims as statutorily based and have applied the three-year statute of limitations under Kan. Stat. Ann. § 60-512. See Wagher v. Guy's Foods, Inc., 885 P.2d 1197, 1204 (Kan. 1994) (concluding that "the [Kansas Act Against Discrimination] does impose the obligation not to discriminate against women in employment where no obligation previously existed under common law" and that "[t]hus, the liability is created by statute, and Kan. Stat. Ann. § 60-512(2) applies"). And in Burnett, the Kansas Supreme Court answered a certified question from the federal district court regarding which state statute of limitations best applied to ERISA claims and concluded that the three-year statute of limitations under Kan. Stat. Ann. § 60-512(2) was most appropriate. 151 P.3d at 838.

17

However, both this court and the Supreme Court have stated that, although federal courts must look to state law to determine the appropriate statute of limitations for many federal causes of action, the question of how to characterize the federal cause of action is one of federal, not state law. See Wilson v. Garcia, 471 U.S. 261, 268-69 (1985). Levy argues that we must reconsider Baker in light of more recent pronouncements by the Kansas Supreme Court such as Burnett (and in theory, Wagher, although he does not cite that case), but he does not explain why we must follow a state court's characterization of a civil rights action as statutory rather than based on a general injury to personal rights. It is the federal court's job to find the most analogous statute under Kansas law, and while the Kansas Supreme Court's pronouncements may be persuasive, we are not bound by them. At oral argument, Levy attempted to distinguish between characterizing the action generally as an injury to personal rights claim, which he claimed was a federal court's duty, and picking the most analogous statute, for which he argued Kansas caselaw should provide guidance.[4]  However, nothing in Wilson or other caselaw counsels such a fine distinction. Rather, in Wilson the

_____

[4] Levy also attempted to distinguish between § 1983 actions and Rehabilitation Act claims at oral argument by arguing that § 1983 does not create substantive rights, but we have already foreclosed that route with our analysis in Baker. See Baker, 991 F.2d at 631-32 (10th Cir. 1993) ("Section 504 of the Rehabilitation Act protects an individual with handicaps from discrimination.  It is a civil rights statute . . . closely analogous to section 1983") (internal citation and quotation marks omitted).

18

Supreme Court affirmed our rejection of a New Mexico Supreme Court case that purported to characterize § 1983 actions as analogous to actions under the New Mexico Tort Claims Act. Id. at 270-71; see also Baker, 991 F.2d at 630 ("Characterization of a federal claim is a matter of federal law."); Garcia v. Wilson, 731 F.2d 640, 642-43 (10th Cir. 1984), aff'd, 471 U.S. 261 (1985).

Although at least one sister court has applied the limitations period from a state statute that mirrored the Rehabilitation Act, the majority of circuits have concluded that Rehabilitation Act claims should be likened to general personal injury claims for purposes of determining a state statute of limitations. See Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008) (collecting cases). But see Wolsky v. Med. Coll. of Hampton Roads, 1 F.3d 222, 224 (4th Cir. 1993) (concluding that a state statute modeled after the Rehabilitation Act provided the most appropriate statute of limitations and declining to follow other courts that had used personal injury statutes of limitation). Levy offers no Kansas statute that replicates the Rehabilitation Act and we see no reason to depart from what at present is a relatively consistent federal scheme. See Owens v. Okure, 488 U.S. 235, 243 (1989) (highlighting "ease and predictability" as important factors in choosing a rule by which federal courts may determine the most appropriate statutes of limitations for § 1983 actions).

Thus, we are bound by our previous holding in Baker—not the Kansas

19

Supreme Court's holdings in <u>Burnett</u> or <u>Wagher</u>—that Rehabilitation Act claims are subject to the two-year statute of limitations under Kan. Stat. Ann. § 60-513. Because Levy joined this lawsuit in March 2011, and his alleged termination from SRS took place in February 2009, his Rehabilitation Act claim is time-barred.

### E. Compensatory damages for Rehabilitation Act claims

Because we conclude that Levy's Rehabilitation Act claims are time-barred, we do not address his appellate arguments that compensatory damages are available for such claims.

### III

For the reasons set forth above, we AFFIRM the district court's dismissal of Levy's ADA and Rehabilitation Act claims against SRS.